MORGAN, LEWIS & BOCKIUS LLP
Joseph E. Floren, State Bar No. 168292
Elizabeth A. Frohlich, State Bar No. 195454
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001

*Of Counsel*

Marc J. Sonnenfeld
Karen Pieslak Pohlmann
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001

*Attorneys for Defendants CardioNet, Inc., Arie Cohen, James M. Sweeney, Martin P. Galvan, Fred Middleton, Woodrow Myers Jr., M.D., Eric N. Prystowsky, M.D., Harry T. Rein, Robert J. Rubin, M.D., and Randy H. Thurman*

[Additional parties and counsel identified on signature page]

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEST PALM BEACH POLICE PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARDIONET, INC., ARIE COHEN, JAMES M. SWEENEY, MARTIN P. GALVAN, FRED MIDDLETON, WOODROW MYERS JR., M.D., ERIC N. PRYSTOWSKY, M.D., HARRY T. REIN, ROBERT J. RUBIN, M.D., RANDY H. THURMAN, CITIGROUP GLOBAL MARKETS INC., LEERINK SWANN LLC, THOMAS WEISEL PARTNERS LLC, BANC OF AMERICA SECURITIES LLC and COWEN AND COMPANY,<br><br>Defendants. | Civil Action No.: 3:10-cv-00711-L -NLS<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION TO TRANSFER THE ACTION TO THE EASTERN DISTRICT OF PENNSYLVANIA PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Date: June 28, 2010<br>Time: 10:30 a.m.<br>Judge: The Hon. M. James Lorenz<br><br>**ORAL ARGUMENT REQUESTED** |

In this action brought by plaintiff West Palm Beach Police Pension Fund ("Plaintiff"), defendants CardioNet, Inc. ("CardioNet"), Arie Cohen, James M. Sweeney, Martin P. Galvan, Fred Middleton, Woodrow Myers, Jr., M.D., Eric N. Prystowsky, M.D., Harry T. Rein, Robert J. Rubin, M.D., Randy H. Thurman (collectively, "CardioNet Defendants"), and Citigroup Global Markets Inc., Leerink Swann LLC, Thomas Weisel Partners LLC, Banc of America Securities LLC and Cowen and Company, LLC (collectively "Underwriter Defendants" and with CardioNet Defendants, "Defendants"), respectfully submit this Reply Memorandum of Points and Authorities in Further Support of Their Joint Motion to Transfer the Action to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).[1]

## ARGUMENT

Rather than address the wealth of authority cited by Defendants in their Opening Brief, Plaintiff commits the majority of its Opposition ("Pl. Br.") to arguments that would virtually nullify 28 U.S.C. § 1404(a), preventing nearly all defendants from satisfying the statutory factors relevant to the appropriateness of transfer. Because it cannot refute Defendants' showing in favor of transfer, Plaintiff would have this Court set an impossibly high bar to transfer of an action to a more convenient forum. As demonstrated below, the barrier that Plaintiff would like this court to construct in denying transfer of this case to a clearly more convenient forum is simply not warranted under the law and the facts of this case. Notably, Plaintiff can point to no significant facts that support the claim that California is a more convenient forum than Pennsylvania. Instead, Plaintiff chooses to ignore significant facts that demonstrate beyond dispute that the Eastern District of Pennsylvania (the "Pennsylvania Court") is the better forum to hear this case.

### I. THE COURT SHOULD DECIDE THE MOTION TO TRANSFER FIRST.

Plaintiff's only response to the Supreme Court's recent teaching that courts should not decide difficult subject-matter jurisdiction issues before the appropriateness of the forum unless the transfer considerations weigh heavily against transfer, see <u>Sinochem Int'l Co. v. Malay Int'l Shipping Corp.</u>, 549 U.S. 422, 425, 429, 432 (2007), is to suggest that it is somehow less

---

[1] Plaintiff voluntarily dismissed the action as to Defendant Barclays Capital, Inc. (erroneously named as Barclay's Capital, Inc.), which was originally one of the moving parties on this Joint Motion, on June 10, 2010 (Docket No. 32).

burdensome for the Court to decide Plaintiff's Motion to Remand first because the law on removal of claims under the Securities Act of 1933 (the "1933 Act") is purportedly "clear." Pl. Br. at 7. Even a cursory review of the cases cited by Plaintiff in its Motion to Remand makes plain the error of its argument. As noted in numerous decisions cited in Defendants' Opposition to Plaintiff's Motion to Remand, the question whether federal courts have subject-matter jurisdiction over removed actions that allege only federal claims under the 1933 Act is unsettled. While the intent of Congress to create exclusive federal jurisdiction and to stop state court litigation of securities class actions of this type is plain, as numerous cases have held, federal courts analyzing the case law and relevant provisions and history of the 1933 Act and the 1998 SLUSA amendments have reached inconsistent conclusions. This Court, which is clearly the less convenient forum, need not wade into this issue, and should follow the Supreme Court's instruction to take the "less burdensome course" and transfer the case to the Pennsylvania Court.

Just as there are cases where transfer has been decided before remand, there are cases, identified by Plaintiff, where a remand motion has been decided before transfer. But Plaintiff's cases are inapposite here. Nearly all of them are based on outdated pre-Sinochem precedent, which sometimes required remand motions to be decided before venue motions. And Plaintiffs' cases generally involved simpler, more easily resolved subject-matter jurisdiction issues.[2] Moreover, other federal courts in California have recently confirmed their discretion to decide motions to transfer before addressing subject-matter jurisdiction and have exercised that discretion in favor of transfer. For example, in San Francisco Tech., Inc. v. Adobe Sys. Inc., No. 09-6083, 2010 WL 1463571 (N.D. Cal. Apr. 13, 2010), the court noted that the "Supreme Court [in Sinochem] clarified that the only absolute prohibition is that against deciding issues going to

---

[2] Even assuming the "three-step methodology" described in Conroy v. Fresh Del Monte Produce, Inc., 325 F. Supp. 2d 1049, 1053-54 (N.D. Cal. 2004), survives Sinochem, for example, "preliminary scrutiny" of Plaintiff's remand motion here establishes only the complexity of the subject-matter jurisdiction issue. Contrary to Plaintiff's cursory discussion, neither Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031 (9th Cir. 2008), which considered only the removability of a 1933 Act claim under CAFA, nor Proctor v. Vishay Intertechnology, Inc., 584 F.3d 1208 (9th Cir. 2009), which did not involve the 1933 Act at all and concerned only removal of state law claims under SLUSA's amendments to the Securities Exchange Act of 1934 (including exceptions thereto that are irrelevant here), addresses or simplifies the key issues involved in determining subject-matter jurisdiction over this action.

Reply Memo. of Points and Authorities in Further Support of Defendants' Joint Motion to Transfer

2

the <u>merits</u> prior to finding that jurisdiction exists" and that "[a]lthough the court cautioned jurisdiction should be addressed first where it can be 'readily determine[d],' it is proper to take the 'less burdensome course' where it cannot." <u>Id.</u> at *2 (emphasis in original; internal citation omitted); <u>see also</u> <u>Public Employees' Ret. Sys. of Miss. v. Morgan Stanley</u>, 605 F. Supp. 2d 1073 (C.D. Cal. 2009) (transferring claims under the 1933 Act to New York even though plaintiff sought remand and argued that removal of its state court class action was improper). This Court should follow the same approach.

This motion presents no issues on the merits or substance of the action that would require the Court to determine whether federal subject-matter jurisdiction exists. The Court unquestionably has jurisdiction to transfer the action to the more convenient Pennsylvania Court, which would then determine Plaintiff's remand motion and, assuming it denies remand, proceed to adjudicate the controversy. Given the intricate issues presented by the remand motion as compared against the simplicity of this motion, this is a case where the threshold procedural issues of the clearly more appropriate forum may and should be decided first.

## II. TRANSFER TO THE EASTERN DISTRICT OF PENNSYLVANIA IS PROPER.

Plaintiff does not dispute that this action "might have been brought" in Pennsylvania, thereby clearly conceding the first step in the two-step inquiry set forth in <u>Hatch v. Reliance Ins. Co.</u>, 758 F.2d 409, 414 (9th Cir. 1985). Instead, Plaintiff challenges the three statutory factors regarding (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interest of justice. None of Plaintiff's challenges to these factors is persuasive.

### A. The Convenience of the Parties Weighs in Favor of Transfer.

Plaintiff fails to address, much less to distinguish, the numerous cases cited by Defendants where courts transferred federal securities cases in which the plaintiff and most of the defendants, particularly the corporation that is subject to the federal securities claims, had no connection to the chosen forum. Indeed, Plaintiff does not cite a single case in addressing this factor and instead suggests that, because discovery is likely to occur in "numerous states," transfer to the Pennsylvania Court is not warranted. <u>See</u> Pl. Br. at 8-9. However, Plaintiff fails to address the fact that <u>all</u> Defendants, including the few who reside in California, have sought transfer to the

1  Pennsylvania Court as a matter of convenience. Moreover, most of the sixteen Defendants, upon
2  whose alleged misstatements or omissions this action will focus, reside in or near Pennsylvania.
3  See Def. Br. at 8. Plaintiff, a resident of Florida, has not explained why California is supposedly
4  more convenient than Pennsylvania and effectively concedes that it has no cognizable preference
5  for a forum, because it can conduct discovery regardless of which court hears this case. As such,
6  the convenience of the parties strongly weighs in favor of transfer.

**B.     The Convenience of the Witnesses Weighs in Favor of Transfer.**

Plaintiff also fails to address the cases cited in Defendants' Opening Brief that address the convenience of witnesses in the context of federal securities cases. As those cases make clear, courts routinely transfer such actions to the court nearest the key witnesses where "plaintiff alleges that certain documents contained false or misleading statements, [and] the key witnesses are frequently 'officers and employees of [the defendants] who participated in drafting or distributing [those] statements.'" In re Global Cash Access Holdings, Inc. Sec. Litig., No. 08-3516, 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008); see also Def. Br. at 9-10. Plaintiff does not challenge this authority. Instead, Plaintiff suggests that to demonstrate that this factor weighs in favor of transfer, Defendants must detail their planned defense and specify "which prospective witnesses they actually intend to call, as well as topics of testimony they plan to elicit."[3] Pl. Br. at 10. Plaintiff's argument is misplaced for several reasons.

First, Plaintiff relies on selected case law from other circuits that is neither binding nor persuasive here. Courts in the Ninth Circuit do not require the unreasonably high level of specificity that Plaintiff proposes. See, e.g., Metz v. U.S. Life Ins. Co. in the City of N.Y., 674 F. Supp. 2d 1141, 1147 (C.D. Cal 2009) (noting only that courts should consider the "number of witnesses" and the "nature and quality of their testimony" and finding that defendants had met this burden by identifying the witnesses and describing their general areas of testimony regarding insurance policy negotiations and claims handling). This is because, as Plaintiff recognizes, such

---

[3] Defendants' Opening Brief met their burden, in seeking to transfer the case, to demonstrate that Pennsylvania is the more convenient forum for witnesses. In response, Plaintiff has made no effort to identify any reasons why California would be a more convenient forum for witnesses.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Reply Memo. of Points and Authorities in
Further Support of Defendants' Joint Motion to      4
Transfer

information would not be available until significant discovery has taken place in the litigation—by which point, the parties having conducted discovery and litigated the case for a significant time, some of the factors that weigh in favor of transfer at the outset would no longer apply, as the parties would have already incurred the burden of litigating in an inconvenient forum. Plaintiff's proposed test for establishing convenience to witnesses would mean that a moving party rarely could satisfy this factor at the outset of a case without conducting discovery to assess the materiality of witness testimony. This impossible construct makes little sense and is not workable as a test for determining witness convenience.

In any event, in their Opening Brief and Declaration of Philip Leone in support, Defendants identified numerous party and non-party witnesses in or near Pennsylvania who would likely be required to testify, and described the nature and quality of their testimony on matters that are obviously central to the allegations of the Amended Complaint. See Def. Br. at 10-11. Defendants also pointed to particular witnesses, employees of CardioNet in Pennsylvania, who would provide relevant testimony and identified their titles, roles, and areas of testimony that they would likely provide in light of the allegations in the Amended Complaint. See Def. Br. at 10. These descriptions clearly meet the applicable standard to demonstrate the forum most convenient for witnesses, demonstrate their relevance to the litigation, and support the conclusion that the Pennsylvania Court would be the more appropriate court to hear this case for the convenience of these witnesses. It is telling that Plaintiff offers no contrary evidence.

**C.     Transferring This Action to Pennsylvania Serves the "Interest of Justice."**

**1.     Transfer to Pennsylvania Does Not Improperly Shift the Burden of Litigation from One Forum to Another.**

Plaintiff argues that transfer should be denied "where transferring venue would 'merely shift the burden of litigating in a foreign forum rather than eliminate it.'" Pl. Br. at 10 (quoting Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001)); see also id. at 8. This proposition makes no sense. If taken literally, all motions to transfer under 28 U.S.C. § 1404(a) would be denied because such a transfer will always result in at least some burden to the transferee court. In addition, Plaintiff mischaracterizes Sigros, which held that transfer would be

Reply Memo. of Points and Authorities in
Further Support of Defendants' Joint Motion to           5
Transfer

1  inappropriate "where its effect is merely to shift inconvenience from one party to the other." 129
2  F. Supp. 2d at 71. Thus, the Sigros court was concerned not with the burden on the courts but
3  whether transfer would result in a shift of burden between the parties. As described above and in
4  the Opening Brief, Plaintiff can point to no reason why transfer to the Pennsylvania Court would
5  result in some greater inconvenience to it compared to litigating the case in California.

6      Plaintiff also makes a misleading statistical argument that the Pennsylvania Court has a
7  "much more congested" docket than this district. Notwithstanding the bare numbers of cases
8  pending in each court, the more meaningful weighted filings statistics set forth in the same source
9  show that this district is more congested than the Pennsylvania Court (with 539 weighted filings
10 per judgeship versus 351 in the Pennsylvania Court). Moreover, on average, the Pennsylvania
11 Court disposes of civil cases more quickly than courts in this district. Plaintiff cites only data
12 from 2009 to give the impression that Pennsylvania takes longer to dispose of civil cases (13.2
13 months) compared to courts in this district (six months). See Pl. Br. at 11. The Pennsylvania
14 Court's average time-to-disposition figure for 2009, however, was substantially skewed by the
15 disposition of many old cases within a massive MDL proceeding that year, and otherwise was
16 consistent with earlier years in which the Pennsylvania Court had a lower average time to
17 disposition rate than this district. See Declaration of Marc J. Sonnenfeld ¶¶ 2-5, served and filed
18 herewith (public report by Chief Judge of Pennsylvania Court confirming same); see also Admin.
19 Ofc. U.S. Courts, Federal Court Management Statistics, available at http://www.uscourts.gov/cgi-
20 bin/cmsd2009.pl and compare the Pennsylvania Court's civil case disposition figures for 2008
21 (4.8 months) and 2007 (5.7 months) with this district's civil case disposition figures for 2008 (6.2
22 months) and 2007 (5.9 months). Plaintiff's statistics, to the extent they are relevant at all, suggest
23 that the Pennsylvania Court will be able to resolve the case more quickly than this Court.

24     In any event, Plaintiff's argument misses the point because it assumes that this action
25 would be transferred to the Pennsylvania Court without that court having any familiarity with the
26 facts. As Defendants describe in more detail below and in their Opening Brief, there is
27 significant factual overlap between this case and the related securities class action currently being
28 heard by District Judge Stewart Dalzell of the Pennsylvania Court (the "Pennsylvania Action").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Reply Memo. of Points and Authorities in
Further Support of Defendants' Joint Motion to    6
Transfer

1  As such, transfer here would not be to a court unfamiliar with the facts and parties involved.

### 2. Pennsylvania Has a Greater Interest in This Litigation Than California.

In disputing that Pennsylvania does not have any greater interest in this litigation than California, Plaintiff again points to no facts or reasons why California's interest is greater than or even equal to Pennsylvania's in hearing this case.[4]  Plaintiff offers no rebuttal to the fact that Pennsylvania has a greater interest than any California court in resolving disputes involving the activities of a corporation headquartered in Pennsylvania.  Instead, Plaintiff suggests that the fact that CardioNet used to be headquartered in California balances out this factor.  This argument is not persuasive; Plaintiff cannot show how CardioNet's former headquarters in California provides a California court today with any interest in the outcome of the case.

Plaintiff also argues that the earlier-filed Pennsylvania Action is irrelevant because, although the actions involve the same parties and facts, the Pennsylvania Action involves a different class period, different securities claims and fewer defendants.  Pl. Br. at 11.  By Plaintiff's reasoning, the cases would have to be nearly identical in every respect before an argument could be made to support transfer to a court already addressing a similar earlier-filed case.  This is not the law, and Plaintiff's perfunctory effort to differentiate the cases is not persuasive.  Both cases present many of the same key legal issues, regardless of pleading standards.  See Def. Br. at 13.  Moreover, they involve significant common questions of fact.  See Def. Br. at 12-13.  For example, both actions are based on similar claims about CardioNet's MCOT™ technology and reimbursements for its use.  Compare Pennsylvania Action Compl. ¶¶ 2-3, 39-42, 48, 53-54 (attached as Exhibit 2 to Def. Br.), with Am. Compl. ¶¶ 2-4, 6, 17-19, 54 (attached as Exhibit 1 to Def. Br.).  Both complaints also focus on allegations that rates for Medicare reimbursement concerning CardioNet's MCOT™ technology were likely to decline significantly, referring to the Jefferies analyst report.  Compare Pennsylvania Action Compl. ¶¶ 4-5, 68-72 with Am. Compl. ¶¶ 7, 58, 59.  Indeed, the principal difference between the two actions

---

[4] In addition, Plaintiff does not even address, much less dispute, Defendants' related point that judicial economy would be better served by transfer of this case to Pennsylvania.

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

Reply Memo. of Points and Authorities in
Further Support of Defendants' Joint Motion to     7
Transfer

1  is that they each concern similar or the same statements, on the same subjects, but made at

2  different times. The closely related nature of this action and the earlier-filed Pennsylvania Action

3  cannot seriously be disputed, and supports transfer.

### 3. Plaintiff's Choice of Forum Should Be Disregarded.

Plaintiff admits that its "choice of forum is entitled to less deference" but claims it is nevertheless entitled to some weight here. Nowhere does Plaintiff identify any support for its position. Pl. Br. at 12. Plaintiff admits that (i) it is not a resident of California; and (ii) it seeks to represent a nationwide class of persons who purchased CardioNet stock, thereby diffusing the locations of potentially aggrieved parties. The existence of either one of these facts is alone sufficient to discount the deference usually afforded to Plaintiff's forum choice. See Def Br. at 15. Indeed, courts have suggested that the two factors identified above warrant discounting a plaintiff's preference entirely. See Szegedy v. Keystone Food Prod., Inc., No. 05-5369, 2009 WL 2767683, at *4 (C.D. Cal. Aug. 26, 2009) ("Although plaintiff's choice of forum is generally given deference, in this case, because plaintiffs [sic] do not reside in this forum and because this case is a class action, the usual reasons for deferring to a plaintiffs [sic] choice of forum do not apply."). Here, the only facts that even arguably warrant any consideration of Plaintiff's choice of forum are that CardioNet was still headquartered in California during its IPO (despite having established its operations that are at issue here to Pennsylvania prior to the IPO) and that CardioNet's counsel was located in California.[5] Those bare facts are insufficient to demonstrate that any substantial relevant conduct, let alone a majority thereof, occurred in California. Def. Br. at 16-17. For all these reasons, Plaintiff's choice of forum in California should be disregarded.

### 4. The Availability of Documents and Witnesses Subject to Compulsory Process in Pennsylvania Weighs in Favor of Transfer.

Plaintiff contends that the location of documents is no longer a relevant consideration given recent advancements in technology, citing case law outside this jurisdiction. However, authority from this Circuit makes clear that the location of documents remains a relevant

---

[5] Plaintiff simply ignores Defendants' arguments regarding the allegations in the Complaint establishing that dissemination of the allegedly false statements relating to the Secondary Offering occurred in Pennsylvania, not California.

1  consideration in the context of securities claims, and courts continue to grant transfer where
2  documents relating to alleged misrepresentations and omissions are located in a different forum.
3  See Def. Br. at 18-19.
4  　　　　Plaintiff's argument that the availability of third-party witnesses subject to compulsory
5  process is a "non-issue" is wrong.  While Plaintiff cites decisions outside California to suggest
6  that witnesses' live testimony could be replaced by videotaped deposition, it fails to address
7  decisions from California confirming that transfer to a location where witnesses are within a
8  court's subpoena power is preferable.  See Def. Br. at 18.  It also ignores courts' preference for
9  live testimony.  See Raynes v. Davis, No. 05-6740, 2007 WL 4145102, at *4 (C.D. Cal. Nov. 19,
10 2007) (quoting SEC v. Kasirer, No. 04-4340, 2005 WL 645246, at *3 (N.D. Ill. Mar. 21, 2005)
11 ("Although alternatives to live testimony, such as videotaped depositions, are available, live
12 testimony is nevertheless preferable.  Indeed, one of the aims of section 1404(a) is to avoid 'trial
13 by deposition.'")).  Finally, Plaintiff claims, oddly, that "[t]o the extent a third party witness is not
14 within the subpoena power of any district court, then transfer to the Eastern District of
15 Pennsylvania will do nothing to secure that witness' testimony."  Pl. Br. at 14.  Part of the reason
16 transfer of this case to Pennsylvania is appropriate is precisely because the Pennsylvania Court
17 would have subpoena power over many of the relevant third-party witnesses—witnesses with
18 significant roles and connection to Plaintiff's allegations and who Defendants described and
19 identified in their Opening Brief, whereas this Court does not.  Def. Br. at 13, 18.

## CONCLUSION

21 　　　　For the reasons set forth above and in their Opening Brief, Defendants respectfully request
22 that the Court transfer this action to the Eastern District of Pennsylvania pursuant to 28 U.S.C. §
23 1404(a), and that it address this motion before ruling upon Plaintiff's motion to remand.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Reply Memo. of Points and Authorities in
Further Support of Defendants' Joint Motion to　　9
Transfer

Dated:  June 18, 2010         Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:  /s/ Joseph E. Floren
          Joseph E. Floren

*Attorneys for CardioNet Defendants*

GIBSON DUNN & CRUTCHER LLP

By:  /s/ Dean J. Kitchens
          Dean J. Kitchens

Dean J. Kitchens, State Bar No. 82096
Theane Evangelis Kapur, State Bar No. 243570
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel. 213.229.7726
Fax 213.229.6726

*Attorneys for Defendants Citigroup Global Markets Inc., Leerink Swann LLC, Thomas Weisel Partners LLC, Banc of America Securities LLC and Cowen and Company, LLC*

**SIGNATURE CERTIFICATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Dean Kitchens, counsel for Citigroup Global Markets Inc., Leerink Swann LLC, Thomas Weisel Partners LLC, Banc of America Securities LLC and Cowen and Company, LLC, and that I have obtained Mr. Kitchens' authorization to affix his electronic signature to this document.

Dated:  June 18, 2010         By:  /s/ Joseph E. Floren
                                        Joseph E. Floren